UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 15bk13819 |
| | ) | |
| Ace Track Co., Ltd., | ) | Chapter 15 |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

This matter comes on for consideration on USCO, S.p.A.'s Amended Motion for Order Granting Protection under 11 U.S.C. § 1522 [Dkt. No. 64] (the "Amended Motion"), brought by USCO, S.p.A. ("USCO"), a creditor in the above-captioned chapter 15 case. The Amended Motion is opposed by Sooan Cho, the foreign representative (the "Foreign Representative") of Ace Track Co., Ltd. (the "Debtor"), and by Valuepart, Inc. ("VPI"), another creditor of the Debtor.

The Amended Motion raises serious concerns regarding the Debtor's postpetition treatment of property of the Debtor that is within the territorial jurisdiction of the United States. Further, the litigation surrounding the Amended Motion evidences a misunderstanding of the parties regarding the statutory roles of foreign representatives and debtors in chapter 15 cases generally, and this case specifically.

Upon a review of the parties' respective filings and after holding two hearings on the matter, the court finds that, though the Amended Motion raises significant issues, the Amended Motion failed to establish the statutory and factual grounds upon which any claim for affirmative relief was predicated. Further, the Amended Motion was presented in a manner that obfuscated whether affirmative relief was actually sought. The Amended Motion in fact appears to only request declaratory relief. For these reasons, it is the court's conclusion that the Amended Motion should be and, by order concurrent with this Memorandum Decision, is granted insofar as this Memorandum Decision declares the state of the law with respect to the parties' duties, but otherwise denied without prejudice.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. § 157(b)(1) & (c); *In re Radco Merch. Servs., Inc.*, 111 B.R. 684, 686 (N.D. Ill. 1990). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

The scope of what is or is not a core proceeding when arising in a chapter 15 case is unsettled. *See In re Bluberi Gaming Techs., Inc., et al.*, Case No. 16bk05364, --- BR ---, 2016 WL 4167281, at *1 (Bankr. N.D. Ill. August 4, 2016) (Barnes, J.).[1] Recognition of foreign proceedings and other matters under chapter 15 of the Bankruptcy Code are expressly core proceedings. 28 U.S.C. § 157(b)(2)(P). At least one court has held, however, that the "other matters" language from this section is not outcome determinative. *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 676 (S.D.N.Y. 2011) ("that 'recognition of foreign proceedings and other matters under chapter 15 of title 11' are core proceedings is not relevant" to a determination of whether such "other matters" are in fact core proceedings). Put another way, the "other matters" catchall operates in much the same way as section 105 of the Bankruptcy Code; it helps fill in the gaps but does not allow the court to act where it clearly should not. *See, e.g., Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978) ("There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted."); *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1197-98 (7th Cir. 1989) (same); *see also Bluberi Gaming Techs.*, 2016 WL 4167281, at *1.

Here, each party has voluntarily submitted itself to this court's jurisdiction (the Debtor and the Foreign Representative, by petitioning for chapter 15 relief, and the movant by bringing the Amended Motion) or has impliedly consented to this court's jurisdiction, and thus the court may statutorily hear and determine the matters as core matters. *Radco Merch. Servs., Inc.*, 111 B.R. at 686; *Bluberi Gaming Techs.*, 2016 WL 4167281, at *2. Further, a question of conditions on chapter 15 relief under section 1522(b) or modification of relief granted under section 1522(c) is clearly a creature of the statute itself, the Bankruptcy Code, and thus is a core proceeding arising under title 11. 28 U.S.C. § 157(b)(1); *Wellness Int'l Network, Ltd. v. Sharif*, --- U.S. ---, ---, 135 S. Ct. 1932, 1939 (2015); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015).

Thus the court has jurisdiction and constitutional authority to hear and determine this matter.

---

[1]     As this court noted in *Bluberi*, there is a paucity of published case law on chapter 15 in this jurisdiction. *Bluberi Gaming Techs.*, 2016 WL 4167281, at *6 n.7. The court has, therefore, taken care to provide somewhat more involved explanations herein than it might otherwise do for a matter of this nature.

## PROCEDURAL HISTORY

In considering the Amended Motion, the court has considered the arguments of the parties at the April 27, 2016 and June 29, 2016 hearings on the Amended Motion, and has reviewed and considered the following filed documents in the bankruptcy case:

(1)   USCO, S.p.A.'s Motion for Order Granting Protection Under 11 U.S.C. § 1522 [Dkt. No. 61] (the "Original Motion" and together with the Amended Motion, the "Motions");

(2)   Order [Dkt. No. 63] (the "Scheduling Order");

(3)   Foreign Representative's Response in Opposition to USCO, S.p.A.'s Amended Motion for Order Granting Protection under 11 U.S.C. § 1522 [Dkt. No. 65] (the "Response");

(4)   Brief in Support of USCO, S.p.A.'s Motion for Order Granting Protection under 11 U.S.C. § 1522 [Dkt. No. 66];

(5)   Supplemental Brief in Support of USCO, S.p.A.'s Motion for Order Granting Protection under 11 U.S.C. § 1522 [Dkt. No. 78] (the "Supplemental Brief in Support"); and

(6)   Foreign Representative's Response to USCO, S.p.A.'s Supplemental Brief in Support of Its Motion for Order Granting Protection under 11 U.S.C. § 1522 [Dkt. No. 85] (the "Supplemental Response").

The court has also considered the procedural history and previous court filings in the chapter 15 case, including:

(a)   Chapter 15 Petition for Recognition of a Foreign Main Proceeding [Dkt. No. 1] (the "Petition");

(b)   Foreign Representative's Motion for (I) Provisional Relief Pursuant to 11 U.S.C. § 1519 and (II) Approve Shortened and Limited Notice [Dkt. No. 8] (the "Interim Relief Motion");

(c)   USCO, S.p.A,'s [sic] Objection to Foreign Representative's Motion for (I) Provisional Relief Pursuant to 11 U.S.C. § 1519 and (II) Approve Shortened and Limited Notice [Dkt. No. 11];

(d)   USCO, S.p.A.'s Motion for Change of Venue [Dkt. No. 12] (the "Change of Venue Motion");

(e)   Order Granting Foreign Representative's Motion for: (I) Provisional Relief Pursuant to 11 U.S.C. § 1519 and (II) Approve Shortened and Limited Notice [Dkt. No. 18] (the "Provisional Order");

(f)   Foreign Representative's Objection to USCO, S.p.A.'s Motion for Change of Venue [Dkt. No. 28] (the "Venue Response");

(g)     Valuepart, Inc.'s Response to USCO S.p.A.'s Objection to, and Brief in Support of, Foreign Representative's Motion for (I) Provisional Relief Pursuant to 11 U.S.C. § 1519 and (II) Approve Shortened and Limited Notice [Dkt. No. 31];

(h)     Valuepart, Inc.'s Response in Opposition to USCO, S.p.A.'s Motion for Change of Venue [Dkt. No. 32];

(i)     Foreign Representative's Reply in Support of Motion for (I) Provisional Relief Pursuant to 11 U.S.C. § 1519 and (II) Approve Shortened and Limited Notice [Dkt. No. 33];

(j)     USCO, S.p.A.'s Motion for Relief from Prior Order [Dkt. No. 40];

(k)     USCO, S.p.A.'s Limited Objection to the Foreign Representative's Petition for Recognition [Dkt. No. 42];

(l)     Valuepart, Inc.'s Response to Motion for Relief from Prior Order [Dkt. No. 44];

(m)     Order [Dkt. No. 50] (Withdrawing Change of Venue Motion);

(n)     Order [Dkt. No. 51] (Mooting Motion for Relief from Provisional Order);

(o)     Agreed Order Recognizing Foreign Main Proceeding [Dkt. No. 52] (the "Recognition Order");

(p)     Foreign Representative's Motion to (I) Modify Automatic Stay and (II) Waive 14 Day Stay Pursuant to Fed. R. Bankr. P. 4001(a)(3) [Dkt. No. 54] (the "Stay Relief Motion"); and

(q)     Order Modifying the Automatic Stay [Dkt. No. 57] (the "Stay Relief Order").

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989) (Goldgar, J.) (recognizing same). In addition, the court has taken into account the history of this chapter 15 case generally.

BACKGROUND

The matter before the court arises from two overlapping disputes. The first, between the Debtor and VPI, and the second, between the Debtor, VPI and USCO. The Amended Motion arises from the attempt of USCO, in order to protect a potential recovery in the latter, to intervene in and potentially upset the resolution of the former. While unusual, this sort of dynamic is not unique. What makes this matter unique, if it is indeed unique, is how this dynamic comes into play in the context of a chapter 15 case.

The Debtor is a corporation organized under the laws of Korea. The Debtor's prepetition business appears to have consisted of manufacturing and selling various track and link assemblies and related parts. The tracks in question are what might commonly be referred to as continuous tracks, tank treads or caterpillar tracks. Such items are often used on heavy construction and excavation equipment, allowing such equipment to move over soft or uneven terrain in much the same way that tires allow automobiles to do on the roadways. How the Debtor has operated on a postpetition basis, if at all, is one of the issues in contention here.

VPI, a corporation organized under the laws of Delaware, is an importer, distributor and seller of such parts. From at least 2011, the Debtor and VPI conducted business together under a series of contracts. That business gave rise to a series of disputes. On April 30, 2014, these disputes caused VPI to file a demand for arbitration and statement of claim against the Debtor with the American Arbitration Association (the "VPI Arbitration").[2]

USCO, on the other hand, is a joint stock company established under the laws of Italy with its principal place of business in Modena, Italy. USCO's business appears, in part, to have overlapped with that of the Debtor. That overlap may have infringed upon one or more patents held by USCO. In that regard, on or about June 30, 2014, USCO commenced litigation (the "Patent Litigation")[3] against the Debtor, VPI and one other entity, claiming infringement of USCO's Italian patents relating to industrial split master links and sealed and lubricated track assemblies.

Following the commencement of the VPI Arbitration and the Patent Litigation, the Debtor sought rehabilitation in Korea under the Rehabilitation and Bankruptcy Act, Case No. 2014hoihap1063 Rehabilitation (the "Korean Proceeding"), before the Republic of Korea Changwon District Court bankruptcy division (the "Korean Court"). On September 30, 2014, the Korean Court, through Presiding Judge Jeon Dea-Gyu, Judge Kim Seong-Rae and Judge Ji Eun-Hui, authorized the Korean Proceeding and appointed the Foreign Representative as receiver and to act on behalf of the Debtor in commencing the above-captioned chapter 15 case.

On April 17, 2015, the Foreign Representative commenced the above-captioned chapter 15 case, seeking an order granting recognition of the Korean Proceeding under 11 U.S.C. § 1517. The Foreign Representative predicated the filing in the United States and, more specifically, in Chicago on: (a) the Debtor's contract rights against VPI, which is based in Lake County, Illinois; (b) the VPI Arbitration taking place in Illinois; (c) the Debtor's alleged $7.0 million receivable owed to it from VPI that the Debtor is seeking to recover through the VPI Arbitration (the "VPI Receivable"); and (d) a retainer being held for the Debtor by its Chicago-based litigation counsel. *See* Venue Response, pp. 2-3.[4] Prior to the hearing on recognition of the Korean Proceedings (the "Recognition

---

[2]     *Valuepart, Inc. v. Ace Track Co. Ltd. v. Valuepart Europe S.p.A.*, No. 01-14-0000-2903 (commenced Apr. 30, 2014).

[3]     *USCO S.P.A. v. Ace Track Co., Ltd., Valuepart, Inc. and Reonetrack Co., Ltd.*, Case No. 2:14-cv-02590-JPM-tmp (W.D. Tenn. commenced June 30, 2014).

[4]     Venue of chapter 15 cases is determined by 28 U.S.C.§ 1410. Under section 1410, each of these has been found to form the basis of a United States chapter 15 filing. *See, e.g., Krys v. Farnum Place LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239, 244-45 (2d Cir. 2014) (claims); *In re Berau Capital Res. Pte Ltd*, 540 B.R. 80, 83 (Bankr. S.D.N.Y. 2015) (contract rights); *In re Octaviar Admin. Pty Ltd*, 511 B.R. 361, 372-73 (Bankr. S.D.N.Y. 2014) (retainers). However, the treatment of property rights is state-specific. *Butner v. U.S.*, 440

Hearing"), the Foreign Representative sought, by way of the Interim Relief Motion, emergency interim relief under 11 U.S.C. § 1519. In the Interim Relief Motion, the Foreign Representative asked that the court order a stay of the Patent Litigation on an interim basis in the case, pending the Recognition Hearing.[5]

USCO responded to the Interim Relief Motion with an objection, and also with the Change of Venue Motion. In both, USCO argued that the venue of this chapter 15 case was improper; that the case should have been brought in Tennessee (where the Patent Litigation is pending), if at all. USCO also argued that the Foreign Representative's request for the stay to apply was procedurally improper. USCO argued that the automatic stay was not available until recognition, and thus, the Foreign Representative's request was a request for an injunction which should have been brought as an adversary proceeding. *See* Fed. R. Bankr. P. 7001(7).

Judge Jacqueline P. Cox of this court conducted a hearing on the Interim Relief Motion on May 7, 2016. The Change of Venue Motion was also on for presentment that day. The result of the hearing was that the Change of Venue Motion was continued for briefing to the Recognition Hearing and the Interim Relief Motion was granted.[6]

---

U.S. 48, 55 (1979). For example, Illinois recognizes three kinds of retainer agreements between lawyers and clients. *Dowling v. Chicago Options Assocs., Inc.*, 226 Ill. 2d 277, 292 (2007).

[5]     In a case under chapter 15 of the Bankruptcy Code, the section 362 stay does not automatically apply. 11 U.S.C. § 103(a). Upon recognition, the stay applies "with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a)(1). Prior to that time, "where relief is urgently needed to protect the assets of the debtor or the interests of the creditors," the court may, at the request of a foreign representative, apply some, but not all of the protections of the stay. 11 U.S.C. § 1519(a)(1).

[6]     While not involved at that stage, the undersigned approves of the result. The pending venue challenge did not serve as an impediment to the entry of the Provisional Order, and continuing the Change of Venue Motion to the Recognition Hearing afforded the Foreign Representative and other interested parties an opportunity to reply while not delaying a hearing on the stay relief sought.

USCO's procedural argument was also misplaced. While put forth in a manner that suggests an injunction (an understandable approach given the complexity of section 1519), the court views the Interim Relief Motion as it relates to this issue as nothing other than a request that the stay apply provisionally. The application of the stay is available provisionally prior to recognition. 11 U.S.C. § 1519(a). Though not enumerated, the relief set forth therein is not exclusive, *In re Vitro, S.A.B. de C.V.*, 455 B.R. 571, 579 (Bankr. N.D. Tex. 2011), and section 1519(f), by providing limits on the application of section 362 in provisional orders, makes clear that the application of a stay broader than the stay of execution against the debtor's assets enumerated in section 1519(a)(1) is possible. *See In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 859-65 (Bankr. C.D. Cal. 2008) (analyzing in detail this question, and concluding that an adversary need not be brought). The Bankruptcy Code clearly allows for the stay to be applied by motion. *See* 11 U.S.C. § 362(c)(4)(B) (while using the term "requests," setting forth a procedure clearly through motion and hearing, not adversary proceeding and trial). The court agrees with *Pro-Fit* that the protections of section 362, while injunctive in nature, are not the same as an injunction. *Pro-Fit Holdings*, 391 B.R. at 864-65.

While modern parlance collapses stays and injunctions, an injunction normally arises from the court's jurisdiction and inherent authority over individuals and property, and the power to issue such injunctions is presently codified in the All Writs Act, 28 U.S.C. § 1651. The stay, on the other hand, is rooted in the law of moratory, the governmental power to safeguard the diffuse economic interests of the people, *see, e.g., East N.Y. Savs. Bank v. Hahn*, 326 U.S. 230, 231-32 (1945) (upholding state use of moratory authority), often used

Prior to the Recognition Hearing, the parties made numerous filings. The Change of Venue Motion was fully briefed, as was the Debtor's Petition and USCO's opposition thereto. USCO also filed a motion seeking relief from the Provisional Order, and the parties fully briefed that motion and their opposition thereto, respectively.

On June 4, 2015, the court conducted the Recognition Hearing. Despite the numerous matters in contention, the hearing was not contentious. USCO withdrew the Change of Venue Motion and the Foreign Representative, jointly with USCO, submitted an agreed, proposed Recognition Order. Upon the filings and given the lack of opposition, the court entered the Recognition Order. Given that the Provisional Order was superseded thereby, the court deemed USCO's request for relief from the Provisional Order to be moot. *See* Recognition Order, ¶ 4.

The Recognition Order, as entered, preserved the parties' rights to further relief from this court regarding the VPI Arbitration and the Patent Litigation. Specifically, the Recognition Order provided as follows:

> Nothing herein shall prejudice the rights of any party to this proceeding from seeking, or opposing additional relief it would otherwise be entitled to seek or oppose, including, but not limited to (i) the rights of the Foreign Representative to seek additional relief pursuant to 11 U.S.C. sec. 1521; or (ii) the rights of any creditor or other interested entity to (a) oppose such additional relief or (b) seek relief from or modification of the automatic stay pursuant to 11 U.S.C. sec 362 relating to the proceedings captioned Valuepart, Inc. v. Ace Track Co., Ltd. v. Valuepart Europe S.p.A., Case No. 01-14-0000-2903, and USCO, S.p.A. V. Valuepart, Inc., et al, Case No. 2:14-cv-02590 in the United States District Court for the Western District of Tennessee, Western Division, all of which rights are expressly reserved.

Recognition Order, ¶ 5.

By entry of the Recognition Order, the stay in section 362 of the Bankruptcy Code became applicable "with respect to the debtor and the property of the debtor that is within the territorial

---

to stay collection activity. *See also Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 515-56 (analyzing the Bankruptcy Act's moratorium authority, not under the court's injunction authority, but Congress's constitutional authority to legislate); *Louisville Jt. Stock Land Bank v. Radford*, 295 U.S. 555, 581 (1935) (the "measures adopted for the mortgagor's relief, including moratorium legislation …, resulted primarily in a stay"). Unlike injunctions, stays are generally not focused on specific actors. Their effect is intended to be broad and the factors taken into account are equally broad. Though the stay is not solely *in rem* as *Pro-Fit* implies, *see* 11 U.S.C. § 1520(a)(1) (making it clear that the stay issued upon recognition protects both the debtor and the debtor's property), the bankruptcy stay is consistent with the law of moratory and the *Pro-Fit* reasoning is otherwise sound.

Further, though section 1519(e) applies the standards, procedures and limitations of an injunction to relief under its section, this court agrees with the courts that have considered the question that the structure of sections 1519, 1520 and 1521, when read together, clearly make an adversary unnecessary. *In re Worldwide Educ. Servs., Inc.*, 494 B.R. 494, 497-98 & n.1 (Bankr. C.D. Cal. 2013); *Pro-Fit Holdings*, 391 B.R. at 865; *In re Ho Seok Lee*, 348 B.R. 799, 802 (Bankr. W.D. Wash. 2006). From a purely practical standpoint, requiring an adversary for interim relief would also make such relief difficult if not impossible to obtain prior to the hearing to which the relief is intended to act as a bridge.

jurisdiction of the United States." 11 U.S.C. § 1520(a)(1). As a result, and as expressly authorized by paragraph 5 of the Recognition Order, the day after the Recognition Order was entered, the Foreign Representative moved for relief from the stay to continue the VPI Arbitration. That request was unopposed and was granted. The relief provided in the Stay Relief Order was expressly limited, as is discussed below. While the VPI Arbitration was permitted to proceed, the Foreign Representative did not ask for the stay to be lifted insofar as any disposition any of the Debtor's assets subject to the stay, and no relief in that regard was granted.

## THE MOTIONS

Nearly nine months later, on February 18, 2016, USCO filed the Original Motion. Six days after the entry of the Scheduling Order with respect to the Original Motion and three weeks after the filing of the Original Motion, on March 7, 2016, USCO filed the Amended Motion. The Motions comport with the strictures of paragraph 5 of the Recognition Order.

The Motions are predicated on a series of allegations by USCO. USCO alleges that "VPI and its assets and/or the Debtor's domestic assets are the primary means for USCO to make an economic recovery from VPI and/or the Debtor on its Patent Litigation claim." Original Motion, ¶ 10. USCO also alleges that "the Debtor and VPI are contemplating settlement of the Debtor's claims against VPI or have settled such claims." Original Motion, ¶ 11; see also Amended Motion, ¶ 9. In particular, USCO claims that the Debtor, without authority of this court, has settled the VPI Arbitration by assigning its counterclaim against VPI, presumably the VPI Receivable, to a third party. See, e.g., Supplemental Brief in Support, pp. 2-3.

In short, USCO alleges that either the Foreign Representative or the Debtor has settled litigation and disposed of property of the Debtor that is within the territorial jurisdiction of the United States, each without appropriate authority from this court.

The Amended Motion was fully briefed within the time frame set forth in the Scheduling Order, and the parties appeared before the court on April 27, 2016.[7] At the conclusion of that hearing, the court took the matter under advisement, promising either a written ruling before June 21, 2016 or to take the bench that day and rule orally. Because of scheduling issues, that date was moved to June 29, 2016. In the interim period, however, USCO—without authority and despite the matter being under advisement—filed a supplement to the Amended Motion.[8] Three days later USCO filed a motion seeking leave for the supplement. The court was not informed of the motion for leave prior to the ruling date.

On June 29, 2016, the court postponed its ruling given the late USCO filings. In light of the Foreign Representative's lack of opposition, leave for the filings was granted. The court nonetheless afforded the other parties an opportunity to respond to the supplement itself, setting further briefing with respect thereto. At the conclusion of that additional briefing, on July 20, 2016, the matter was once again fully briefed and the matter was taken under advisement, this time without a set ruling

---

[7]     There is an ambiguity extant regarding whether the Amended Motion or the Motions together were briefed, discussed infra.

[8]     Such practice runs contrary to the established rules of conduct in this court and has been expressly disapproved of by the undersigned. See In re Aguirre, 548 B.R. 525, 532 (Bankr. N.D. Ill. 2016) (Barnes, J.).

date. This Memorandum Decision constitutes the court's ruling on the matters so under
advisement.

## DISCUSSION

As noted at the outset, the Motions raise serious concerns regarding the Debtor's
postpetition treatment of property of the Debtor that is within the territorial jurisdiction of the
United States. USCO seeks clarification of the propriety of that treatment, and the court is inclined
to provide such. However, the Motions are problematic. While the court normally eschews form
over substance analyses, here, there is no avoiding the complications created by the manner in which
the Motions were presented. The court finds that it must consider those complications.

The court begins with a discussion of issues of interpretation regarding chapter 15. Next,
the court considers complications with the Motions. The court then considers the propriety of relief
under section 1522. The court then addresses additional complications with the Motions in light of
its conclusion regarding section 1522. Last, the court considers the remaining substance of the
requests before the court.

A.   Interpreting Chapter 15

Chapter 15, at its origin, is not United States law. In enacting the Bankruptcy Abuse
Prevention and Consumer Protection Act, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA") and
thereby creating chapter 15 of the Bankruptcy Code, Congress codified in the United States the
Model Law on Cross-Border Insolvency (1997) (the "Model Law") of the United Nations
Commissions on International Trade Law ("UNCITRAL"). The Model Law is not United States
law, and the terms used therein, such as "foreign representative," are not United States concepts.

Given that chapter 15 has its origins in international law, Congress directed courts to take a
broader perspective in interpreting it. 11 U.S.C. § 1508 ("In interpreting this chapter, the court shall
consider its international origin, and the need to promote an application of this chapter that is
consistent with the application of similar statutes adopted by foreign jurisdictions."). The legislative
history of BAPCPA makes clear that Congress expected the Guide to Enactment of the Model Law
(1997, as amended) (the "Guide to Enactment"), also promulgated by UNCITRAL, to be consulted
when performing such consideration. H.R. Rep. No. 109-31, pt. 1, at 106 n.101 (2005); *Morning Mist
Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 132 (2d Cir. 2013). It seems equally
appropriate to consider the UNCITRAL Practice Guide on Cross-Border Insolvency Cooperation
(2009, as revised) (the "Practice Guide") and the other explanatory texts produced by UNICTRAL.
*In re OAS S.A.*, 533 B.R. 83, 92 (Bankr. S.D.N.Y. 2015) (consulting both the Guide to Enactment
and the Practice Guide). Such texts were not in existence at the time and therefore could not be
mentioned by Congress.

In considering chapter 15 and the Model Law together, several observations spring to light.
First, the Model Law is organized into Articles, the numbers of which correspond to the numbered
sections of chapter 15, as enacted. Thus Article 15 corresponds to section 1515, and Article 20
corresponds to section 1520, and so forth. Second, it is left to the enacting jurisdiction to integrate
these Articles into existing domestic law. Guide to Enactment, ¶ 21-23. Third, in so doing, it is
understood that the enacting jurisdiction may change provisions of the Model Law. Guide to

Enactment, ¶ 20. Last, several of the Articles leave it to the enacting country to provide detail. *See, e.g.,* Model Law, arts. 19-21; Guide to Enactment, ¶ 38.

Given the differences between the concepts in the Model Law and those in the Bankruptcy Code, it is surprising how well the Model Law has worked in the United States. Cynically, it seems that much of the international cooperation that has taken place thereunder would have happened nonetheless under the preexisting framework developed under what was section 304 of the Bankruptcy Code. And the cracks have shown on occasion, especially where the appending of the Model Law to the Bankruptcy Code as chapter 15 is at odds with existing bankruptcy concepts. *See, e.g., In re Barnet,* 737 F.3d 238, 247-48 (2d Cir. 2013) (holding that section 109 of the Bankruptcy Code applies in chapter 15 cases, despite such a conclusion being at odds with the Model Law).

No matter how it works in general, however, the real question is how it works here. This requires a determination of what the Motions actually request. To do that, the court must first dispense with some of the complications regarding the Motions.

B.     The Initial Complications Regarding the Motions

Six days after the entry of the Scheduling Order and three weeks after the filing of the Original Motion, USCO filed the Amended Motion. Despite the confusion caused by the filing of the Amended Motion after the entry of the Scheduling Order, it is clear that the Foreign Representative was aware of the Amended Motion and filed the Response directly in relation to it. *See* Response, p.1 (captioning the Response as to the "Amended Motion" and including with it a redline of the Original Motion as against the Amended Motion).

Nonetheless, the Amended Motion was filed after the entry of the Scheduling Order and without leave. Further, the Amended Motion failed to attached a proposed form of order, in violation of the Local Bankruptcy Rules for the Bankruptcy Court of the Northern District of Illinois (hereafter, the "Local Rules," or individually "LBR __"). LBR 9013-1(C)(5) ("For all motions, a proposed order in the form required by the Administrative Procedures, with a title specifying the relief granted in the order.").

While these may seem like small points and in many matters they would be, in this matter they are not. The Amended Motion does not seek the entirety of the relief sought by the Original Motion, and in making that change, USCO has caused the issue before the court to be less than clear. Even a cursory glance at the respective prayers for relief in the Original and Amended Motions demonstrates this lack of clarity.

1.     *The Confusion Caused by Multiple Motions*

In the Original Motion, USCO prayed for two separate forms of relief:

First, USCO asked that the court enter an order confirming that the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules" and, individually, "Rule ___") and this court's orders prohibit any attempt by the Debtor or the Foreign Representative to "(i) settle or recover [the Debtor's] claims against VPI, (ii) administer, realize, or distribute any of the Debtor's domestic assets, including its claims against VPI and any proceeds therefrom, and/or (iii) cause any of the Debtor's domestic assets, including its claims against VPI and any proceeds therefrom, to be

removed and transferred from the territorial jurisdiction of the United States." Original Motion, ¶ A.

Second, USCO asked that this court, specifically pursuant to section 1522, "suspend the Debtor's right to transfer the Debtor's domestic assets to Korea or anywhere else outside the territorial jurisdiction of the United States, including in the ordinary course of business, without further request by the Debtor and/or Foreign Representative, notice to USCO, and opportunity for hearing in this Court." Original Motion, ¶ B.

As per the Local Rules, the proposed order accompanying the Original Motion sets forth these two forms of relief clearly, in essentially the same manner as contained in the prayer. See LBR 9013-1(C)(5).

The Amended Motion, however, repeats only the first request, the request for clarification of the extent of the law, Amended Motion, ¶ A, and fails to contain the second request. The Amended Motion offers no explanation as to how the Original Motion is to be treated in light of the Amended Motion. One possibility is that the Amended Motion is intended to amend only the first request in the Original Motion but leave the second request unaltered and before the court. Another possibility is that Amended Motion is intended to amend and supersede the Original Motion (thus removing the second request in the Original Motion from consideration).

By filing the Amended Motion after the entry of the Scheduling Order without leave and without a proposed order, several opportunities to clarify what was being sought were lost. If USCO had sought leave to amend, this issue could have been clarified. Had it done so, the court normally would have entered an order mooting the first motion or clarifying the interplay of the two, thereby eliminating the ambiguity regarding what requests remain before the court.

2. *Section 1522 as the Basis for Declaratory Relief*

The nature of the two requests adds to the confusion here. The second request in the Original Motion is unquestionably one under section 1522. It makes reference to section 1522 in the prayer itself. However, the first request (and sole request in the Amended Motion) is not. On its face, this prayer is one for declaratory judgment. It makes no reference to section 1522.

This omission is appropriate, in that section 1522 is not a section that, by itself, provides for declaratory relief as a remedy. Instead, such a request would normally be asserted under section 105 of the Bankruptcy Code. See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."). Granting such a request under section 105 is clearly within the court's authority. See 11 U.S.C. § 105(a); In re Caesars Entm't Operating Co., Inc., 808 F.3d 1186, 1188 (7th Cir. 2015) (section 105 "grants the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties"); see also 28 U.S.C. § 2201 (the Federal Declaratory Judgment Act) (affording "any court of the United States" the power of declaratory judgment); U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indemnity Assoc., Inc. (In re U.S. Lines, Inc.), 197 F.3d 631 (2d Cir. 1999) (bankruptcy court, in a core proceeding,

may decide declaratory judgment), *cert. denied* 529 U.S. 1038, 1038 (2000).[9]  No adversary is necessary.[10]

The Motions confuse this issue, however, as they are both predicated under section 1522. Both the Original Motion and the Amended Motion set forth in their respective descriptive titles that relief is sought under section 1522.[11]  Each argues, albeit superficially (*see* section 1522 discussion *infra*), that the court should grant relief under section 1522.

If the Amended Motion was intended to supersede the Original Motion and if the Amended Motion's sole prayer for relief is not under section 1522, however, the result is deceptive, to say the least.  Section 1522 simply does not apply.

The majority of the parties' argument has, however, been focused on section 1522. The Foreign Representative's arguments, for example, only touch on the request for declaratory relief, and never actually characterize it as such.  Instead, the Foreign Representative characterizes USCO's request as one for an injunction under section 1522.  By doing so, the Foreign Representative does a disservice to what USCO has actually requested.  By allowing such characterization to continue unchecked, USCO does the same.

In light of the foregoing, the court must presume that both requests from the Original Motion remain before the court.  It will take up the question regarding section 1522 first.

C.      11 U.S.C. § 1522

1.      *The Predicates of Section 1522 Relief*

In the Motions, USCO moved this court for relief under section 1522 of the Bankruptcy Code.  Section 1522 states as follows:

---

[9]      It should be noted that an advisory opinion would clearly be outside the court's authority.  U.S. CONST. art. III, § 2, cl. 1 (limiting the federal courts' authority to cases and controversies); *California v. San Pablo & Tulare R.R.*, 149 U.S. 308, 314 (1893) ("The court is not empowered to decide moot questions, or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it."); *United States v. Fischer*, 833 F.2d 647, 649 (7th Cir. 1987) (same).  Here, the allegations by USCO and effect of the pending chapter 15 case make clear that there is an actual case or controversy and USCO's request is not one for an advisory opinion.

[10]      While it may seem that an adversary proceeding would be required, *see* Fed. R. Bankr. P. 7001(9) (providing that some declaratory judgment actions must be brought by adversary), a careful reading is that Bankruptcy Rule 7001 constrains only declaratory judgments "relating to any of the foregoing," *i.e.* those matters that already require an adversary.  *Id.*  This is not such a matter, and Bankruptcy Rule 7001 does not apply.

[11]      *See* LBR 5005-3(C)(4) ("The first page of each document must bear the caption, *descriptive title*, and number of the case or proceeding in which it is filed, the case caption and chapter of the related bankruptcy case, the name of the judge to whom the case is assigned, and the next date and time, if any, that the matter is set.") (emphasis added).

(a) The court may grant relief under section 1519 or 1521, or may modify or terminate relief under subsection (c), only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected.

(b) The court may subject relief granted under section 1519 or 1521, or the operation of the debtor's business under section 1520(a)(3), to conditions it considers appropriate, including the giving of security or the filing of a bond.

(c) The court may, at the request of the foreign representative or an entity affected by relief granted under section 1519 or 1521, or at its own motion, modify or terminate such relief.

(d) Section 1104(d) shall apply to the appointment of an examiner under this chapter. Any examiner shall comply with the qualification requirements imposed on a trustee by section 322.

11 U.S.C. § 1522.

USCO's invocation of section 1522, both in the Original Motion and the Amended Motion, is troubling.

First, USCO fails to articulate in the Motions what subsection of 1522 it is relying upon. All references in the Motions are simply to section 1522. In both Motions, USCO uses the phrase "sufficient protection." *See, e.g.*, Original Motion, ¶ 17, Amended Motion, ¶ 13. The phrase "sufficient protection" arises in this context in section 1522(a). But in oral argument, USCO's counsel refers more specifically to section 1522(b) as the basis for the requests. *See* Tr. 4, 11, Apr. 27, 2016. The phrase "sufficient protection" is not directly applicable under section 1522(b), and USCO never explains how these two thoughts are to be connected or how either of these two sections provides for declaratory relief.[12]

Second, assuming that the request is indeed brought under section 1522(b) as USCO's counsel argued in the hearings, the limitations of that provision are self-evident. Section 1522(b) allows the court to apply "conditions it considers appropriate," as the statute says, but USCO fails to connect the conditions requested to predicates set forth in the statute. Such conditions may be applied either to "relief granted under section 1519 or 1521," or to "the operation of the debtor's business under section 1520(a)(3)." 11 U.S.C. § 1522(b). As such, section 1522(b) is not free standing. It qualifies relief granted under the enumerated sections.

The court has not, however, granted relief under section 1521, and the Provisional Order, while under section 1519, no longer applies in this case. Recognition Order, ¶ 4. The Recognition Order makes very clear that no relief under section 1521 was sought or granted. Recognition Order, ¶¶ G, 2. The Stay Relief Order is equally silent as to section 1521 relief, and the court will not read one into the plain language of that order, despite USCO's recent urgings to do so.

---

[12]    Though USCO does not raise this, the concept does arise in section 1521 and is discussed below by the court in the context of entrustment. *See* 11 U.S.C. § 1521(b).

There is, therefore, no relief under section 1519 or section 1521 of the Bankruptcy Code to which conditions may be applied, and as such, these predicates for section 1522 relief are not satisfied.

2.    *Operation of the Debtor's Business by the Foreign Representative*

Section 1522 might also apply in relation to "the operation of the debtor's business under section 1520(a)(3)." 11 U.S.C. § 1522(b). As the parties spend much time addressing this concept and it is a source of much confusion, this merits deeper consideration.

Consider again what USCO has alleged: That either the Foreign Representative or the Debtor has settled litigation and disposed of property of the Debtor that is within the territorial jurisdiction of the United States. Consider also what USCO's allegations implicate: That the VPI Receivable, which, in part, formed the basis for both the venue and jurisdiction of these chapter 15 cases, and, as is alleged by USCO, is the primary means for an economic recovery to USCO on its Patent Litigation claim, has been assigned away without appropriate authority from this court.

In support of these allegations, USCO points to what appears to be a complaint filed in unrelated litigation, *Ace Tech Co., Ltd v. ValuePart, Inc.*, Case No. 16cv06216 (N.D. Ill. June 14, 2016), attached as Exhibit 1 to the Supplemental Brief in Support (the "Ace Tech Complaint"). The Ace Tech Complaint contains within it allegations that support USCO's position. Ace Tech Complaint, ¶¶ 7-8. USCO has, however, done nothing to authenticate the Ace Tech Complaint, and has not asked the court to take judicial notice of anything regarding that case.[13]

The Foreign Representative claims to have taken none of the steps alleged by USCO. Instead, the Foreign Representative points the finger at the Debtor.

In the hearing on April 27, 2016, and repeated in the Supplemental Response, the Foreign Representative's counsel states "[T]he foreign representative is not doing something. The debtor in Korea is doing something with VPI pursuant to actually its entire rehabilitation proceeding there, and it's being done, and it's being implemented." *See* Supplemental Response, ¶ 3 (quoting Tr. 10-11, Apr. 27, 2016, attached as Exhibit A to the Supplemental Response); Supplemental Response, ¶ 5 ("[USCO's] complaints merely confirm what the Foreign Representative has previously and repeatedly acknowledged—i.e., … that the Debtor had been taking steps, including with respect to VPI, as part of the implementation of its rehabilitation plan in Korea.").

The Foreign Representative argues that the Debtor's actions are not the same thing as actions by the Foreign Representative. That is self-evident. *Compare* 11 U.S.C. § 101(13) ("'debtor' means person or municipality concerning which a case under this title has been commenced") with 11 U.S.C. § 101(24) ("'foreign representative' means a person or body … authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding").

---

[13]    Even had there been a request for judicial notice, that would not allow the court to presume the truth of what is alleged in the Ace Tech Complaint. While this court could take judicial notice of proceedings in another court, *Guar. Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008), that does not permit the court to accept in so doing the truth of the matters asserted in the filings therein.

It is understood that in taking this position, the Foreign Representative was directly countering USCO's section 1522 request and the statutory predicates relating thereto. And the Foreign Representative is correct, in that limited context.

Section 1520(a)(3) states that "unless the court orders otherwise, the *foreign representative* may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552." 11 U.S.C. § 1520(a)(3) (emphasis added). Section 1522(b), in turn, provides relief relating to "the operation of the debtor's business under section 1520(a)(3)." 11 U.S.C. § 1522(b). In order for operation of the Debtor's business to satisfy the predicate section 1522(b), therefore, the operation must be done by the Foreign Representative.

While USCO has made allegations regarding conduct of the Debtor and a settlement, the court cannot conclude on the record before it that the *Foreign Representative* has entered into any such settlement. As such, the Foreign Representative is correct, this predicate is not met. Section 1522 does not apply to this matter.

In successfully making this argument, the Foreign Representative nonetheless ignores the 800-pound gorilla lurking in this matter: That should the alleged actions have occurred, USCO has raised a legitimate concern. It appears that the Foreign Representative assumes that there is no issue here should the actions in question have occurred, but not involved the Foreign Representative. For the purposes of section 1522(b), that is correct. For the remainder, however, that is not the case. The court will, therefore, revisit the question of operation of the Debtor's business below.

D.    Further Complications Regarding the Motions

Before taking up the remaining substance of the Motions, the court must return to the question of fairness. Having rejected the application of section 1522, the court is now faced with an equally vexing question: Does the inapplicability of section 1522 have bearing on the disposition of the remaining request (the only request in the Amended Motion and only remaining request in the Original Motion), when each Motion, on its face, appears to rely on section 1522 in making this request? This question is both one of proper pleading and practice, and one of the underlying concerns of fundamental fairness and due process.

The court notes here that it has no indication that USCO in any way presented the issues in the manner in question in order to obtain an advantage over the Foreign Representative. While the filings are misleading, there appears to have been no intent to mislead. The Foreign Representative, has chosen to characterize this request as a request for an injunction, the request is simply not that.[14] On the record before it, the court cannot find that that is the result of an intention to mislead.

---

[14]    It is true that USCO's request, whether cleverly or inartfully, might be just that in disguise. If so, the Foreign Representative is correct, that had the Amended Motion been a request for an injunction, it would be correctly denied, both because such a request should be brought by an adversary proceeding, Fed. R. Bankr. P. 7001(7), if not predicated on a specific section of the Bankruptcy Code providing for such relief, but also because the court is not in the habit of enjoining actions already statutorily prohibited. *Bluberi Gaming Techs.*, 2016 WL 4167281, at *9 ("[t]he remedy for failure to comply with [statutory] duties is not an order compelling compliance.").

Were there an intent to mislead, this matter would be cut and dried. No party should be permitted to mislead intentionally other parties or the court. *In re Lightfoot*, 217 F.3d 914, 917 (7th Cir. 2000) ("It is one thing for a lawyer to advocate an unreasonable position to a court; usually the court can prevent any serious harm to anyone just by rejecting the position. It is another thing for a lawyer to defeat an opposing party's claims by misleading the court, whether by a misrepresentation or by a pregnant omission.").

Further, if the motion were so misleading as to be unfathomable, that too would result in denial of relief sought by the movant. "It is not the Court's responsibility to find arguments, facts, and supporting case law for the parties." *Sanders v. JGWPT Holdings, Inc.*, Case No. 14 C 9188, 2016 WL 4009941, at *11 (N.D. Ill. July 26, 2016). Instead, it is the "advocate's job … to make it easy for the court to rule in his client's favor." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006). "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). "Nor are they archaeologists searching for treasure." *Jeralds ex rel. Jeralds v. Astrue*, 754 F. Supp. 2d 984, 985 (N.D. Ill. 2010) (*citing DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir.1999)); *see also Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 508 (N.D. Ill. 2011) (summarizing the foregoing).

So what then, about the case here? Here, while the Motions are misleading, they are not so misleading that it cannot be understood what is being sought. True, it would have been better if USCO had made them more clear. *Dal Pozzo*, 463 F.3d at 613 ("It would have been better had the parties and the district court explained the legal basis for [the relief sought] from the beginning. An advocate's job is to make it easy for the court to rule in his client's favor; at a minimum, this means stating the legal grounds for a motion."). As was the court in *Bobak*, however, the court here is perfectly capable of reading through the surplusage and seeing what was actually sought. So too, one must assume, was the Foreign Representative.

Yes, the caption fails to accurately state all of what was sought. But that is not insurmountable. *United States v. Rogan*, Case No. 209-CV-314]VB, 2010 WL 3927489, at *2 (N.D. Ind. Sept. 30, 2010) ("While ideally motion titles should inform the court about what is requested, *courts look at the substance, not the title. See Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (7th Cir.1983) ("The court will construe [the motion], however styled, to be the type proper for the relief requested.").") (emphasis added); *see also Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 631 F. Supp. 2d 1010, 1048 (N.D. Ill. 2009), *aff'd*, 683 F.3d 1356 (Fed. Cir.), *and aff'd*, 683 F.3d 1356 (Fed. Cir. 2012) (same).

And yes, the Motions do not set forth the basis for relief in a manner as fulsome or as clearly as the court would have preferred. *See* Fed. R. Bankr. P. 9013 ("[A] motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought."). But once, again, the substance of what USCO sought was clear, as was the prayer for relief. And it is the substance courts review. *Rogan*, 2010 WL 3927489, at *2.

What is required here is for the Foreign Representative to have been given notice of what was sought and an opportunity to respond. *Dal Pozzo*, 463 F.3d at 613 ("[Respondent] had ample notice [of what was sought] and he was given an opportunity to respond, which is all that was required in this situation."). Here, both of the Motions make clear that this request (the first in the Original Motion and the only in the Amended Motion) was a request for clarification of the extent

of the law. The Motions contain sufficient reference to both Rule 9019 and section 363 of the Bankruptcy Code, and the respective prayers for relief and orders are clear.

Though the Foreign Representative did not take up directly the actual prayer for relief in the Amended Motion, it could have. As in *Dal Pozzo*, the Foreign Representative had all that was required in this situation—notice and an opportunity to respond. By submitting a redline to the court of the Original Motion as against the Amended Motion, the Foreign Representative made abundantly clear that it was aware of the differences between the two. The court must therefore conclude that the Foreign Representative's approach was intentional. The essential nature of our adversarial system is to allow the parties to choose their positions without interference from the court. *See, e.g., United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("It is not this court's responsibility to research and construct the parties' arguments."); *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 249 F.R.D. 530, 535 n.3 (N.D. Ill. 2008) ("Indeed, to require that they do so is at odds with the fundamental premise of our adversarial system."). That should not be second guessed by the court.

As such, despite the court's ruling on section 1522, the request for clarification remains before the court. The court must therefore take up the remaining request from USCO, that the court enter an order confirming that the Bankruptcy Code, the Bankruptcy Rules and this court's orders prohibit any attempt by the Debtor or the Foreign Representative to "(i) settle or recover [the Debtor's] claims against VPI, (ii) administer, realize, or distribute any of the Debtor's domestic assets, including its claims against VPI and any proceeds therefrom, and/or (iii) cause any of the Debtor's domestic assets, including its claims against VPI and any proceeds therefrom, to be removed and transferred from the territorial jurisdiction of the United States." Amended Motion, ¶ A.

E.    Application of the Bankruptcy Code, the Bankruptcy Rules and
      This Court's Orders to the Alleged Settlement and Assignment

To what extent the Bankruptcy Code, the Bankruptcy Rules and this court's orders prohibit, if they do at all, actions by the Debtor or the Foreign Representative, is a question that is both simple and complex.

In particular, USCO asks whether the Stay Relief Order, Rule 9019 or sections 363 and 1520 of the Bankruptcy Code prohibit the Debtor's and the Foreign Representative's actions "without a request for approval from this Court after notice to USCO and an opportunity for a hearing." Amended Motion, ¶ A.[15] The court will consider each of these, in turn.

1.    *The Stay Relief Order (and Sections 1520 and 362)*

The logical place to begin in considering USCO's inquiry is with what has already been done in this chapter 15 case, namely, the entry of the Stay Relief Order. In asking for declaratory

---

[15]    The Original Motion also cited to section 1521 as authority, but that was removed in the Amended Motion. Such an omission does not bear the same confusion as was discussed earlier, as it is clear here that USCO intended to remove section 1521 from its request—for good reason. Section 1521 does not apply except upon request by a foreign representative. *See* 11 U.S.C. § 1521(a) & (b). No such request has been made here. Section 1521, therefore, cannot form the basis for relief in this matter.

judgment, USCO asks in particular whether the Stay Relief Order might require court approval of a settlement of the VPI Arbitration in the manner alleged. Amended Motion, ¶ A.

The Stay Relief Order, however, imposed no conditions on the Debtor or the Foreign Representative. It simply limited the lifting of the conditions already in place. As a result, the Stay Relief Order could not operate to prohibit the actions in question and any prohibition, though it may have been alleviated by the entry of the Stay Relief Order, must find its source of authority elsewhere.

What USCO means to ask is whether the stay under section 362 of the Bankruptcy Code prevents the settlement, and the answer to that question is yes (once again under the facts as alleged by USCO).

The stay under section 362(a) applies to chapter 15 cases upon the entry of a recognition order. 11 U.S.C. § 1520(a)(1). That stay protects both the debtor individually and the property of the debtor that is within the territorial jurisdiction of the United States. *Id.* It is clear, therefore, that no action against the debtor, 11 U.S.C. § 362(a)(1) & (6), or its domestic property, 11 U.S.C. § 362(a)(2)-(5), may continue, absent relief from that stay. Further, arbitration proceedings are clearly within the scope of the stay. *In re Richard B. Vance & Co.*, 289 B.R. 692, 696 (Bankr. C.D. Ill. 2003) ("The stay applies equally to arbitration proceedings as it does to judicial proceedings.") (*citing Savers Fed. S&L Assoc. v. McCarthy Constr. Co. (In re Knightsbridge Dev. Co., Inc.)*, 884 F.2d 145, 148-49 (4th Cir. 1989) (declaring void an arbitration award entered without relief from stay)). The VPI Arbitration was thus stayed by the operation of section 362(a), made applicable by section 1520(a)(1).

As is well established in domestic cases, the bankruptcy stay is a protection afforded to both debtors and creditors. *Paloian v. Grupo Serla S.A. de C.V.*, 433 B.R. 19, 37 (N.D. Ill. 2010) (*citing Knopfler v. Glidden Co. (In re Germansen Decorating, Inc.)*, 149 B.R. 517, 521 (Bankr. N.D. Ill. 1992) (Ginsberg, J.)). As such, most courts believe that a debtor may not unilaterally waive the protections of the stay, even if it is to continue litigation such as appeals involving it. *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495, 497 (10th Cir. 2011) (noting that nine other circuits hold this way); *Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir. 1986); *Assoc. of St. Croix Cond. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982); *see also In re Wheaton Oaks Office Partners*, Case No. 92 C 3955, 1992 WL 381047 at *1-2 (N.D. Ill. Dec. 10, 1992) (*citing Commerzanstalt*).

One court in this district has, however, adopted the minority position in this respect. *In re Mid-City Parking, Inc.*, 332 B.R. 798, 810 (Bankr. N.D. Ill. 2005) (Cox, J.). In *Mid-City*, it was held that, in light of the fiduciary status of a debtor-in-possession, Rule 6009 permits a debtor-in-possession to continue litigation unilaterally, without leave of the bankruptcy court. *Id.*; Fed. R. Bankr. P. 6009 ("With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.").

It should be noted that *Mid-City*, in part, relies on a series of Tenth Circuit cases in reaching this conclusion, *Mid-City Parking*, 332 B.R. at 810 (*citing Chaussee v. Lyngholm (In re Lyngholm)*, 24 F.3d 89, 91-92 (10th Cir. 1994); *Autoskill v. Nat'l Educ. Support Sys.*, 994 F.2d 1476, 1486 (10th Cir. 1993)), and that the Tenth Circuit has subsequently expressly overruled those cases in that regard. *TW*

*Telecom Holdings*, 661 F.3d at 497. It should also be noted that another minority case, *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 551-52 (Bankr. N.D. Ill. 1994) (Wedoff, J.) (discussed in detail below), is based on the exact opposite interpretation of the interplay between rules and statutes, that the Bankruptcy Rules cannot alter the substantive requirements of the Bankruptcy Code. *Telesphere*, 179 B.R. at 551-52.

Section 362 makes clear that the automatic stay remains in effect until, among other things, an order otherwise is entered by the court. 11 U.S.C. § 362(c). It further makes clear that such an order may only be obtained after notice and a hearing. 11 U.S.C. § 362(d). The express requirements of the statute may not be impliedly abrogated by the Bankruptcy Rules. The undersigned thus declines to follow *Mid-City's* holding in that regard.[16]

As such, absent relief from the stay, both the Debtor and the Foreign Representative were bound by it. The Foreign Representative recognized such when it sought relief from stay to continue the proceeding. And in obtaining the Stay Relief Order, the Foreign Representative did not obtain blanket relief from the stay or specific authority to settle the matter. Instead, the court ordered that:

> The automatic stay is hereby modified to allow the Foreign Representative, the Debtor and any other party to Valuepart, Inc. v. Ace Track Co. Ltd. v. Valuepart Europe S.p.A., Case No. 01-14-0000-2903 currently pending before the American Arbitration Association (the "Arbitration") to take any and all actions necessary to (i) continue litigation in the Arbitration including, without limitation, pre-trial discovery, motion practice and hearing on the merits for the sole purpose of determining the liability of the claims asserted by Valuepart, Valuepart Europe and the Debtor in the Arbitration, if any ….

Stay Relief Order, ¶ 1. Noticeably absent from that language is any language authorizing any party to settle the matter, especially language that would permit the Debtor to assign a claim to a third party in so doing.

The Stay Relief Order further states that:

> With the exception of the [foregoing paragraph], the automatic stay under 11 U.S.C. § 362 shall remain in full force and effect in all respects, specifically including, without limitation, prohibiting any person or entity from (i) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against Debtor on account of or in connection with any liabilities determined in connection with the Arbitration or any other claims or cause of action, or (ii) creating, perfecting, or enforcing any encumbrance against the Debtor or the

---

[16]     Even were the undersigned inclined to adopt the *Mid-City* rationale, that case is still distinguishable from the case at bar. As noted above, *Mid-City* bases its rationale, in large part, on the fiduciary status of a debtor-in-possession. *Mid-City Parking*, 332 B.R. at 814-15, 820. No similar fiduciary status is imposed on a debtor in a chapter 15 case, though as shown by this case, that does not mean a debtor in a chapter 15 case is not subject to similar restraints.

property of the estate on account of or in connection with Arbitration or any other claims or causes of action against the Debtor.

Stay Relief Order, ¶ 2.

The court recognizes that the phrase "hearing on the merits for the sole purpose of determining the liability" seems to imply and therefore permit a conclusion. But there is nothing in the Stay Relief Order that says that clearly. Thus while both the Debtor and the Foreign Representative were authorized to move forward with the VPI Arbitration, they were not authorized by the Stay Relief Order to settle it or dispose of the Debtor's property in so doing. As is the custom with all such matters, the parties must return to the court on further notice, motion and hearing so as to conclude finally the issues therein.

This becomes less clear when the Stay Relief Motion is examined. The Stay Relief Motion assured third parties that the stay relief was "for the sole purpose of determining the Debtor's and [VPI]'s liability, if any" and that "the Debtor's United States assets would not be dismantled" by the authority requested. Stay Relief Motion, ¶¶ 13, 20. But the foregoing phrasing is used in the context of leaving it to the VPI Arbitration to resolve issues, see also Stay Relief Motion, ¶ 20 (stating that the matter will be "brought to its ultimate conclusion" there), and does imply that continuing the VPI Arbitration may result in some finality.

Nonetheless, fundamental rules of due process dictate that a moving party should not be afforded substantive relief beyond that which was requested, without at least some form of additional notice and an opportunity to be heard. Dal Pozzo, 463 F.3d at 613. As no relief other than relief from stay was requested (e.g., the Foreign Representative did not request authority under section 363 of the Bankruptcy Code), the inevitable conclusion is that the Stay Relief Order did not authorize a settlement of the VPI Arbitration or assignment of the VPI Receivable, and section 362 continued to operate to stay any such action.[17]

Finally, the Foreign Representative suggests that the Debtor, if indeed it did settle the VPI Arbitration, did so in furtherance of its Korean reorganization. See Supplemental Response, ¶ 3 (quoting Transcript of Proceedings dated April 27, 2016, at 10:17–11:1, attached as Exhibit A to the Supplemental Response). ("[T]he debtor in Korea is doing something with VPI pursuant to actually its entire rehabilitation proceeding there, and it's being done, and it's being implemented."); Supplemental Response, ¶ 5 ("[T]he Debtor had been taking steps, including with respect to VPI, as part of the implementation of its rehabilitation plan in Korea.").[18]

---

[17]    For the same reasons that stay relief in domestic cases does not constitute abandonment, a separate statutory remedy, Catalano v. C.I.R., 279 F.3d 682, 687 (9th Cir. 2002), stay relief in chapter 15 cases does not remove affected property from the auspices of section 363 of the Bankruptcy Code.

[18]    The Foreign Representative also suggests that USCO, by choosing not to participate in the Korean Proceeding, has made its bed. Response, ¶ 19 ("USCO has consciously chosen to not participate in the Korean Case while another U.S. creditor, Valuepart, has participated in the Korean Case."). That may be the case, but it has little bearing here under the present circumstances. It has not been shown that any action by the Korean Court has divested USCO of its rights. Despite a number of requests from the court for a copy of the Debtor's Korean bankruptcy plan, none has ever been provided. Until it is shown otherwise (and, to the extent applicable, until an action divesting USCO of its rights is granted comity by this court), in the United States, USCO has whatever rights it has under chapter 15.

The Korean Court has no authority to modify the application of the Bankruptcy Code, however. *Farnum Place*, 768 F.3d at 244-45 (if United States property is implicated, bankruptcy court review of a transfer of property is required even if the foreign court approves). Even a confirmed plan from a foreign main proceeding must still comply with provisions of the Bankruptcy Code if it treats assets within the territory of the United States. *Daewoo Motors v. General Motors*, 459 F.3d 1249, 1257 (11th Cir. 2006) (concluding that a confirmed plan did not violate the automatic stay only because it did not affect any property interest in the United States).[19]

As such, despite the Foreign Representative's assertions, the conclusion remains the same: Without further court order, the automatic stay under section 362 and as applied by section 1520(a)(1) prevents the settlement of the VPI Arbitration and any assignment of the claim treated therein.

2.    *Rule 9019*

Beyond the Stay Relief Order, the inquiry turns firmly from what was done to what, perhaps, should have been done. To that end, the court begins with Rule 9019.

Rule 9019 is the rule that addresses settlements during the pendency of a bankruptcy case. It states, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a).

Does Rule 9019 even apply in chapter 15 cases? There is no provision of chapter 15 that incorporates it. But that is not necessary, as the structure of the Bankruptcy Rules is that they apply in every case, unless their scope is otherwise narrowed therein. Fed. R. Bankr. P. 1001 ("The Bankruptcy Rules and Forms govern procedure in cases under title 11 of the United States Code."); *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 497 (N.D. Ill. 1988) ("Bankruptcy Rule 1001 makes the Bankruptcy Rules applicable to all cases and proceedings under Title 11 of the United States Code …."), *on reconsideration in part*, Case No. 87 C 8111, 1989 WL 18112 (N.D. Ill. Mar. 2, 1989).

An argument certainly could be raised that Rule 9019 should not apply. *See, e.g.*, *In re City of Stockton, Cal.*, 486 B.R. 194, 195-98 (Bankr. E.D. Cal. 2013) (explaining why Rule 9019 does not apply in chapter 9 cases, despite not being excepted out of the statutory scheme). As in chapter 9 cases, there is no bankruptcy estate. *In re JSC BTA Bank*, 434 B.R. 334, 341 (Bankr. S.D.N.Y. 2010) ("commencement of a chapter 15 case does not create an 'estate' as that term is used in the Bankruptcy Code").

But Rule 9019 makes no reference to the estate, and there is no history to chapter 15 similar to the one for chapter 9 discussed in *City of Stockton*. Rule 9019 also does not limit its application to settlements involving a trustee, debtor, foreign representative or otherwise. As such, the court can find no good reason to conclude that Rule 9019 does not apply, and no case that fails to apply it

---

[19]    In making this observation, the court does not mean to imply that courts do not, if the correct criteria are met, *see, e.g.*, *Farnum Place*, 768 F.3d at 244-45, afford comity to orders from the foreign court regarding assets within the territory of the United States. The court only observes the requirements and that no request in that regard has been made.

under similar circumstances. Rather, the court finds a series of cases where Rule 9019 has been applied in chapter 15 cases. *See, e.g., In re Grant Forest Prod. Inc.*, Case No. 10-11132 PJW, 2012 WL 3017090, at *1 (Bankr. D. Del. Apr. 11, 2012) (approving chapter 15 consent order under Rule 9019); *In re Grand Prix Assoc. Inc.*, Case No. 09-16545 (DHS), 2009 WL 1850966, at *6 (Bankr. D.N.J. June 26, 2009) (analyzing standards and applying Rule 9019 in chapter 15 case).

Rule 9019 therefore applies. But that application does not end the inquiry, as courts are split over how Rule 9019 applies. Many courts hold that Rule 9019 is mandatory, except in the case of settlements in the ordinary course of business. *See, e.g., In re Leslie Fay Cos., Inc.*, 168 B.R. 294, 305 (Bankr. S.D.N.Y. 1994) ("Compromises may not be made in bankruptcy absent notice and a hearing and a court order."); *see also Salim v. Nisselson (In re Big Apple Volkswagen, LLC)*, Case No. 11-11388 (JLG), 2016 WL 3034744, at *6 (Bankr. S.D.N.Y. May 19, 2016) (proclaiming that this is the majority rule). Others, including courts in this district, hold that it is not. *See Telesphere*, 179 B.R. at 551-52; *see also LeCompte v. Sparks*, Case No. 96 C 1373, 1997 WL 156488, at *4 (N.D. Ill. Apr. 1, 1997) (*citing Telesphere*); *In re Garrett*, 494 B.R. 336, 341 n.4 (Bankr. N.D. Ill. 2013) (Goldgar, J.) (same).

In *Telesphere*, Judge Wedoff of this court stated that:

Consistent with this legislative purpose, the Bankruptcy Code contains no requirement for judicial approval of settlements. *See In re Lee Way Holding Co.*, 1990 U.S.Dist. LEXIS 20228 at *12 ("[T]here is no specific Bankruptcy Code provision authorizing a trustee to settle controversies...."). One of the rules of bankruptcy procedure, Fed. R. Bankr. P. 9019(a), provides a procedure for motions to settle, but it cannot create a substantive requirement for court approval that does not exist in the Code itself. Thus, unless the Bankruptcy Code requires court approval for the underlying action that the trustee seeks to accomplish, there should be no need for court approval of a settlement that effectuates that action.

*Telesphere*, 179 B.R. at 551-52 (footnote omitted). That position, as adopted by the other courts in this district, reflects the minority position on this point. *Rafool v. The Goldfarb Corp. (In re Fleming Packaging Corp.)*, Case No. 03–82408, Adv. No. 04–8166, 2008 WL 682428, at *2 (Bankr. C.D. Ill. Mar. 7, 2008) (noting the minority and majority approaches and adopting the majority one).

The court need not determine the correctness of *Telesphere*, if the result of both the majority rule and the *Telesphere* approach is the same.

*Telesphere* would require this court's involvement in a settlement only if the underlying actions in the settlement also require bankruptcy court approval. As was noted above, however, any settlement of the VPI Arbitration requires further relief from stay. As such, *Telesphere* requires court approval under Rule 9019.

Under the majority rule, the settlement would require court approval if it is not in the ordinary course of business. That analysis follows.

3.    *What Remains*

The remainder of USCO's request appears to be asserted under section 1520, and, as made applicable by section 1520, section 363. Given USCO's shotgun approach and the way these issues circle back on one another, this part of the analysis is the most difficult to organize.

The basic question is easy to answer. Does anything else under section 1520 or section 363 permit the Debtor or the Foreign Representative to settle the VPI Arbitration or assign the VPI Receivable without further court authority? The answer, once again, is "no." The devil, of course, is in the details.

a.    The Debtor's Alleged Actions Would Not Be Authorized

Earlier the court considered whether the alleged settlement and disposition of the Debtor's assets constituted operation of the Debtor's business as the predicated for section 1522(b) relief. In so doing, the court concluded that it did not, solely because the court had no evidence that the *Foreign Representative* had taken those actions, and section 1522(b) required operation of the Debtor's business by the Foreign Representative.

This did not, however, address the remainder of USCO's allegation, that the Debtor had taken these actions, for good reason. The issue of a debtor's operation of its business during a chapter 15 case is complex.

The section 1522(b) request made by USCO in the Original Motion was that the court enter an order suspending *the Debtor's* right to transfer domestic assets outside of the United States, including in the ordinary course, absent further court order. Putting aside the inapplicability of section 1522 to this matter, to accept USCO's request, one must accept that the Debtor has such a right to suspend. To do so, the court would have to conclude that a debtor's ability to operate its business is unaffected in a chapter 15, much in the same way a debtor remains largely unaffected in that regard by the commencement of an involuntary case. *See, e.g.*, 11 U.S.C. § 303(f). As in an involuntary case, it is not the debtor who commences a chapter 15. 11 U.S.C. § 1515(a); *Barnet*, 737 F.3d at 248 ("recognition is sought by a foreign representative, not by a debtor"). But Congress did not choose silence to address this issue elsewhere in the Bankruptcy Code.

The role of the debtor—often as opposed to a trustee—is well defined throughout the other chapters of the Bankruptcy Code. In chapter 7, for example, where the trustee supplants the debtor in managing the bankruptcy estate, the trustee's role is carefully delineated. 11 U.S.C. § 704. The debtor is charged with cooperating with the trustee. 11 U.S.C. § 521(a)(3). The same applies in a chapter 11 once a trustee is appointed. But before that time, the debtor may exercise the powers of the trustee. 11 U.S.C. § 1107. The Bankruptcy Code carefully considers these respective roles, even insofar as the separate rules that apply to a debtor in an involuntary case. 11 U.S.C. § 303(f).

But in a chapter 15 case, that careful consideration and delineation is missing.

This is not also to say that chapter 15 is entirely silent on the operation of a debtor's business, just operation of the business by the debtor. Section 1520, for example and as previously noted, states that "unless the court orders otherwise, the *foreign representative* may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by

sections 363 and 552." 11 U.S.C. § 1520(a)(3) (emphasis added). This makes clear that a foreign representative *may* operate the debtor's business. But where something may occur, it is quite obvious that it also may not. What then?

Section 1520 also makes section 363 directly applicable. 11 U.S.C. § 1520(a)(3). But section 363 is drafted to regulate a "trustee" in its transactions with a debtor's assets. *See, e.g.,* 11 U.S.C. § 363(b) ("The *trustee*, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate ....") (emphasis added); 11 U.S.C. § 363(c) ("[T]he *trustee* may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business ....") (emphasis added). That term, even under the definitions set forth in chapter 15, *see, e.g.,* 11 U.S.C. § 1502, does not encompass either a chapter 15 debtor or a foreign representative. The drafters of chapter 15 appeared to recognize these issues by separately codifying the Foreign Representative's right to invoke section 363. *Compare* 11 U.S.C. § 1520(a)(2) (making section 363 applicable) *with* 11 U.S.C. § 1520(a)(3) (granting a foreign representative rights to use section 363). So debtors appear unable to invoke the powers in section 363 generally.

Going one step further, section 363(c), the section addressing ordinary course of business transactions, does not empower any party, including debtors. Instead, it provides conditions on the exercise of a debtor's already extant power. Section 363, in pertinent part, states: *"If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title* and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1) (emphasis added). The emphasized text makes clear that section 363(c)(1) relies on empowerment granted elsewhere. Noticeably absent from the emphasized list is any reference to chapter 15.

Nowhere, therefore, does chapter 15 make clear whether any party other than the Foreign Representative may operate the Debtor's business within the territory of the United States during the pendency of the chapter 15 case.

The Model Law also affords a debtor in a foreign proceeding affirmative rights within the proceeding commenced under the Model Law, though it certainly contains the flexibility to allow the court to order such rights. *Compare* 11 U.S.C. § 1520 *with* Model Law, art. 20. As the restriction on assets is much more severe and straightforward in the Model Law than in chapter 15, *compare* 11 U.S.C. § 1520(a)(2) *with* Model Law, art. 20 subsec. 1(c) ("The right to transfer, encumber or otherwise dispose of any assets of the debtor is suspended."), it seems certain that the Model Law did not intend for a debtor operate its business or dispose of its assets within the proceeding thereunder, without court authority.

Chapter 15's legislative history leads to the same conclusion. As Congress stated in codifying the law:

> Subsections (a)(2) and (4) apply the Bankruptcy Code sections that impose the restrictions called for by subsection 1(c) of the Model Law. In both cases, the provisions are broader and more complete than those contemplated by the Model Law, but include all the restraints the Model Law provisions would impose. …

....

Subsection (a)(2), by its reference to sections 363 and 552 adds to the powers
of a foreign representative of a foreign main proceeding an automatic right to
operate the debtor's business and exercise the power of a trustee under sections 363
and 542, unless the court orders otherwise.

H.R. Rep. No. 109-31, pt. 1, at 114-15 (2005).

Noticeably absent in this is any reference to the debtor in such cases.

It simply is not tenable to assume that a debtor's right to operate its business or dispose of
an asset in a chapter 15 case is unaffected. A debtor is directly affected by the chapter 15 case.
Even though no bankruptcy estate is created by the commencement of a chapter 15 case, *JSC BTA
Bank*, 434 B.R. at 341 ("commencement of a chapter 15 case does not create an 'estate' as that term
is used in the Bankruptcy Code"), and while the debtor in a chapter 15 case is not a fiduciary to
creditors in the same manner a debtor-in-possession is in chapter 11 cases, recognition brings to
bear provisions of the Bankruptcy Code protecting and governing a debtor's assets within the
territory of the United States.

As the court in *Barnet* points out, "both the automatic and discretionary relief provisions that
accompany recognition of a foreign main proceeding are directed towards debtors." *Barnet*, 737
F.3d at 248. That relief applies "to 'the debtor,' 'the property of the debtor,' or 'an interest of the
debtor in property,' as appropriate." *Id.* The debtor is directly affected by sections 361, 362 and 363
of the Bankruptcy Code, to name only a few, each of which are each made applicable automatically
on recognition of a foreign main proceeding. 11 U.S.C. § 1520(a)(1) & (2).

The fact that chapter 15 does not define the role of the debtor in the same way that the
other chapters do is no doubt intentional. In creating a system of recognition of international
insolvencies, it would be difficult if not impossible for such a system to impose rules of conduct.
The Model Law instead "respects the differences among national procedural laws and does not
attempt a substantive unification of insolvency law." Guide to Enactment, ¶ 3. As such, the rules
governing the conduct of parties will be determined almost entirely by the domestic law of the
foreign main proceeding, and each country that adopts the Model Law will have different standards
applicable to their debtors.

But by remaining mostly silent as to how those parties may or may not act in the United
States, chapter 15 creates an uneasy tension with the presumptions already extant under United
States bankruptcy law. The silence creates a vacuum of sorts. It was once often said that nature
abhors a vacuum.[20] In that, the law is similar. Unlike nature, however, and absent some other
source, the law tends to fill such vacuums with lawyers and litigation. But this issue has not
apparently been litigated before in the United States.

In these instances, as in the case of *Barnet*, chapter 15 is an inartful appendage to the
Bankruptcy Code. Given the way chapter 15 defines (or fails to define) the roles of debtors and
foreign representatives, it nonetheless works well in the instances when the powers of the foreign

---

[20] Despite the work of Blaise Pascal, the saying remains quite common today.

representative mirror those that would arise in a chapter 11 case—either the debtor is akin to a debtor-in-possession in chapter 11 and acts as its own representative (see below) or the foreign representative has control of the debtor's assets in the same manner a chapter 11 trustee would. But when there is a foreign representative without full authority and the debtor continues to act,[21] the statute is problematic.

The court is left, therefore, with the conclusion that in a chapter 15 case a debtor may not, without further authority, operate its business within the territory of the United States or dispose of its assets within the territory of the United States. As in *Barnet*, while this may not have been the intention of the Model Law or the drafters of chapter 15, it is the inevitable conclusion drawn from the statute itself.

This does not leave a debtor without recourse, however. Section 1520, for example and as previously noted, states that "unless the court orders otherwise, the *foreign representative* may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552." 11 U.S.C. § 1520(a)(3) (emphasis added). This makes clear that a foreign representative *may* operate the debtor's business.

Further, section 1520 begins with the phrase, "unless the court orders otherwise." *Id.* One reading of that phrase is that it is prohibitive—it affords the court an opportunity to block a foreign representative's powers under 1520(a)(3). Another is that it is permissive. Conceivably a foreign representative might under that reading ask a court to empower a debtor to operate its business. That was not sought in the Recognition Hearing and the Recognition Order is silent on this issue.

Nothing also prevents a foreign court from authorizing a debtor in a foreign proceeding to act as its own foreign representative, *see, e.g., Bluberi Gaming Techs.,* 2016 WL 4167281, at *2; *In re Cenargo Int'l, PLC,* 294 B.R. 571, 598 n.31(Bankr. S.D.N.Y. 2003) (rejecting an argument would invalidate debtors-in-possession from being their own foreign representatives); *see also* R. Craig Martin & Cullen Drescher Speckhart, *Chapter 15 for Foreign Debtors* 13-17 (Jamie L. Edmonson & Dr. H. Philipp Esser eds., 2016) (discussing and providing cases for how the use of foreign representatives in chapter 15 has been approached),[22] or in jurisdictions where a debtor has authority

---

[21]    This is not uncommon. For example, the respective roles of the monitor and the debtor in a proceeding under Canada's Companies' Creditors Arrangement Act (R.S.C. 1985, c. C-36) would cause problems in line with those at bar. A similar problem might also occur in English administrations, where administrators generally have greater powers than the monitor in Canada, but where the management of the debtor may also, with consent of the administrator, maintain significant power. Insolvency Act 1986, Schedule B1, ¶¶ 59(1), 64; *see also OAS S.A.,* 533 B.R. at 91-100 (determining the extent of a debtor's authority under Brazilian insolvency law to appoint a foreign representative for itself, without court authority, in the face of the oversight by a committee and judicial administrator).

[22]    This practice has occurred in a number of United States chapter 15 proceedings in a variety of jurisdictions, *see, e.g., In re Essar Steel Algoma Inc.,* Case No. 15-12271-BLS (Bankr. D. Del. Dec. 2, 2015) (Dkt. No. 100) (unpublished order of recognition); *In re Zhejiang Topoint Photovoltaic Co., Ltd.,* Case No. 14-24549 (Bankr. D.N.J. Aug. 12 2014) (Dkt. No. 3) (unpublished statement under section 1515 of the Bankruptcy Code), and also holds true where chapter 11 debtors seek under the Model Law in foreign jurisdictions to act as their own representatives. *See, e.g., In re Horsehead Holding Corp.,* Case No. 16-10287-CSS (Bankr. D. Del. Feb 4, 2016) (Dkt. No. 79) (unpublished order appointing affiliate debtor as foreign representative); *In re Xinergy Ltd.,* Case No. 15-70444 (Bankr. W.D. Va. Apr. 7, 2015) (Dkt. No. 44) (unpublished order appointing debtor as foreign representative); *In re Lightsquared Inc.,* Case No. 12-12080-SCC (Bankr. S.D.N.Y. May 16,

akin to a chapter 11 debtor-in-possession, for a debtor in such a foreign proceeding to authorize itself to be its own foreign representative. *See Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408, 411-12 (N.D. Tex. 2012); *In re Compania Mexicana de Aviacion, S.A. de C.V.*, Case No. 10-14182, 2010 WL 10063842 at *2 (Bankr. S.D.N.Y. Nov. 8, 2010). As its own foreign representative, a debtor would be empowered under section 1520(a)(3) to operate its business. But that is not the case here, so absent further relief from the court, only the Foreign Representative may act on the Debtor's behalf in the United States.

Last, a debtor might also be entrusted with administering its assets under section 1521(a)(5) or 1521(b). That is discussed in more detail below, after considering first how the Foreign Representative's right to operate the business applies to the alleged settlement and asset disposition.

b.    The Foreign Representative's Authority Also
Does Not Extend to the Alleged Actions

Unlike a debtor, it is clear that a foreign representative has the right to "operate the debtor's business and … exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552." 11 U.S.C. § 1520(a)(3).[23]

While, as noted above, section 363 is drafted to regulate a "trustee's" transactions with a debtor's assets and a foreign representative is not a trustee, *see, e.g.*, 11 U.S.C. § 1502, the wording of section 1520(a)(3) seems to resolve any concerns in that regard. So section 363 applies to the foreign representative. And section 363 applies, no matter whether the debtor or the foreign representative wishes otherwise. *In re Fairfield Sentry Ltd.*, 539 B.R. 658, 673 (Bankr. S.D.N.Y. 2015) ("Notwithstanding a foreign representative's contrary intention, he can no more 'opt out' of § 363 than can a debtor in possession under chapter 11 or a trustee under chapter 7. The parties' 'intent' is irrelevant because § 363 applies like it or not.").

Section 363 does not permit, however, absent notice and hearing, the disposition of assets outside of the ordinary course of business. 11 U.S.C. § 363(b)(1); *In re Elpida Memory, Inc.*, Case No.

---

2012) (Dkt. No. 42) (unpublished order appointing affiliate debtor as foreign representative); *see also, e.g., In re 19 Entertainment Ltd.*, [2016] EWHC 1545 (Ch) ¶¶ 15-17, available at http://www.bailii.org/ew/cases/EWHC/Ch/2016/1545.html (last visited September 13, 2016) (accepting United States debtor-in-possession as its own foreign representative in English proceedings).

[23]    That authority is automatic upon recognition and does not appear to be contingent on the foreign representative being so authorized in the foreign main proceedings. This creates a possible conflict between the extent of the empowerment of a foreign representative in a chapter 15 case and that representative's authority as granted in the foreign main proceeding. *See* 11 U.S.C. § 101(24) (making clear in defining "foreign representative" that such person or body may have powers of administration, or may simply "act as a representative of such foreign proceeding"). Given that the allegations here do not properly extend to actions by the Foreign Representative, the court need not at this stage determine whether such a conflict exists or resolve it if it does.

12-10947 CSS, 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012) (a debtor's assets may be sold in a chapter 15 case only if there is compliance with section 363).[24]

In that regard, however, the express grant of authority contained in section 1520 also appears to override the restrictive list of empowerment statutes in section 363(c)(1). As a result, it appears that a foreign representative's authority to conduct business includes to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

That leads to the inevitable question: Can the settlement and/or asset assignment be considered "ordinary course," and thus be pursued by the Foreign Representative without notice or hearing? The answer is "no."

What is or is not ordinary course has been subjected to a variety of tests produced by the courts. *See, e.g., Leslie Fay,* 168 B.R. at 305 (citing cases). These include the so-called "vertical dimensions" and "horizontal dimensions" test. *Id.* In this district, the horizontal dimensions test has been found to be unnecessary. *Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.),* 186 B.R. 414, 428–30 (N.D. Ill. 1995). Instead, the vertical dimensions test—also known as the "reasonable expectations test"—has been applied. *Id.; see also In re Commercial Mortgage & Fin., Co.,* 414 B.R. 389, 393 (Bankr. N.D. Ill. 2009) (Barbosa, J.) (same).

While the vertical dimensions test does look to the prepetition conduct in an attempt to determine creditors' expectations and therefore ordinariness, the court in *Garofalo's* made clear that a bankruptcy court must also consider the "changing circumstances that are inherent in a debtor's efforts to operate its business under [title 11]." *Garofalo's,* 186 B.R. at 425. Here, there is no question that the disposition of litigation that, in part, caused the chapter 15 filing and with it a major asset upon which both venue and jurisdiction of the chapter 15 case was predicated is something creditors would reasonably expect to come to the court given the pendency of the chapter 15 case. *See, e.g., Shields v. Duggan (In re Dartco, Inc.),* 197 B.R. 860, 870 (Bankr. D. Minn. 1996) (finding the vertical dimensions test is not satisfied where transactions were entered into in order to satisfy claims against the debtor).

As such, the vertical dimensions test would not be satisfied, and these actions would not be ordinary course. The Foreign Representative may not, without further court authority, use sections 1520 or 363 of the Bankruptcy Code to settle the VPI Arbitration or assign the VPI Receivable.

By answering the question this way, the court can also finally close the question regarding Rule 9019. Because the transactions are not ordinary course and, thus, require further approval, both the majority rule and the *Telesphere* approach would require the Foreign Representative to seek court approval.[25]

---

[24]      It is not relevant that a foreign court may have authorized the settlement or the assignment. *Farnum Place,* 768 F.3d at 244-45; *Daewoo Motors,* 459 F.3d at 1257. Each are within the jurisdiction of this court and authority, if it must be obtained, must also be obtained from this court.

[25]      This would be the Foreign Representative's responsibility, both because the operative statute, section 363, may not be invoked by the Debtor, and because chapter 15 as a whole is drafted so as to have the

c.     Entrustment

The final legal concept implicated by the issues here is that of entrustment. Entrustment is a concept that arises under section 1521 of the Bankruptcy Code—a section that the court has already found inapplicable. For that reason, the court need not consider this concept in great detail. The existence of entrustment as a concept, however, helps clarify the extent of what may, or may not, be allowable in the operation of a debtor's business.

Section 1521 of the Bankruptcy Code makes clear that, upon the request of a foreign representative, the court may enter an order "entrusting the *administration or realization* of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court." 11 U.S.C. § 1521(a)(5) (emphasis added). Further, at the request of the foreign representative, the court may "entrust the *distribution* of all or part of the debtor's assets located in the United States to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521(b).

In using the phrase "another person," each of these subsections clearly allow for the appointment of a debtor in this capacity. *See* 11 U.S.C. § 101(41) ("person" includes individuals, partnerships and corporations). While Congress for some reason chose to use the undefined term "entity" in the definition of "debtor," *compare* 11 U.S.C. § 1502(1) *with* Model Law, art. 2 (not defining debtor), the court does not see the use of this term as being material. A debtor is a person within the meaning of the Bankruptcy Code, and could act under sections 1521(a)(5) & (b).

Because this power to administer, realize or distribute the debtor's assets is afforded only upon request by the foreign representative and order of the court (and in the case of distribution, upon a finding of sufficient protection), the court must conclude that the power to operate a debtor's business does *not* extend to such acts. Lack of the distribution power, for example, has been determined to preclude removal of assets from the territory of the United States, *In re Tri-Cont'l Exch. Ltd.*, 349 B.R. 627, 635-38 (Bankr. E.D. Cal. 2006), a concern expressly raised by USCO.

Here, it is clear settlement of the VPI Arbitration and assignment of the VPI Receivable are acts of administration and distribution. *Cf. Grand Prix*, 2009 WL 1850966, at *3 (basing its approval of a settlement both on Rule 9019 and section 363 *and* on sections 1521(a) & (b)). As such, there is yet another reason why they cannot take place without further authority from the court.

CONCLUSION

Having considered the arguments of the parties, the true nature of what USCO has requested and the confusing landscape of chapter 15 in this regard, the court therefore concludes that the Amended Motion is well taken insofar as it requests declaratory relief. Rule 9019 and section 1520 of the Bankruptcy Code (and applicable thereby sections 362 and 363) do not permit settlement of the VPI Arbitration or assignment of the VPI Receivable treated therein without

---

foreign representative as both the petitioner and the party with the right to seek relief on behalf of the debtor. This makes a foreign representative—at the very least—a sort of *guardian ad litem* of the debtor for the purposes of the chapter 15 case.

further order of the court. Beyond that, the court cannot provide relief on the record before it. It cannot conclude that such actions have in fact occurred without more, and it cannot afford relief that was not requested.

For the foregoing reasons, insofar as the Memorandum Decision declares the extent of the law, the Amended Motion will be granted. Otherwise, the Amended Motion will be denied without prejudice. A separate order resolving the Motion to that effect will be issued concurrent with this Memorandum Decision.

Dated: September 13, 2016                    ENTERED:

                                             Timothy A. Barnes
                                             United States Bankruptcy Judge